UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LEOPOLDO OLZABAL-TAMAYO,

      Petitioner,

      v.

WARDEN *et al.*,

      Respondents.

CAUSE NO. 3:26cv141 DRL-SJF

## OPINION AND ORDER

Immigration detainee Leopoldo Olzabal-Tamayo, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Olzabal-Tamayo filed a reply. The petition is ready to be decided.

Mr. Olzabal-Tamayo is a Cuban national who entered the United States as a refugee in 1994. On October 9, 2003, an immigration judge ordered him removed to Cuba, and he was released on conditions of supervision. On December 11, 2025, United States Immigration and Customs Enforcement (ICE) detained him, and he is currently held at the Miami Correctional Facility.

On February 5, 2026, the government notified Mr. Olzabal-Tamayo of its intent to remove him to Mexico. On February 26, 2026, the respondents represented that the government intended to remove him to Mexico but that they did not know whether it would occur within the next thirty days. On April 2, 2026, the respondents again represented that the government intended to remove him to Mexico but that they did not know whether it

would occur within the next thirty days. On April 10, 2026, the respondents represented that the government intended to transfer Mr. Olzabal-Tamayo to a facility in Louisiana and then to another facility in Phoenix for the purpose of staging his removal to Mexico. They further represented that the government "is still obtaining travel documents."

The respondents first argue that the court lacks subject matter jurisdiction over Mr. Olzabal-Tamayo's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Olzabal-Tamayo ended more than two decades ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who violate nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the

2

removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6) as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Olzabal-Tamayo has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. The respondents identify Mexico as the only country under consideration for removal. His most recent term of detention now spans six months with no indication that the government has taken any measures to obtain travel documents from Mexico. Based on this substantial period of

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

apparent inaction, the court finds that Mr. Olzabal-Tamayo met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal to Mexico in the reasonably foreseeable future.

To rebut this showing, the respondents represent that the government has planned where Mr. Olzabal-Tamayo's removal will be staged and that the government is "still obtaining travel documents" from Mexico. These unsworn representations don't demonstrate that Mr. Olzabal-Tamayo's removal is likely to occur in the reasonably foreseeable future. These representations do not adequately explain why travel documents have not yet been obtained after six months of detention. They do not suggest that the government has submitted a formal request for travel documents, nor do they suggest that the government is in the process of preparing a formal request or any basis for the delay in submitting such a request. They do not provide any insight as to when Mexico might reach a decision once a formal request has been submitted or the likelihood that Mexico will issue travel documents. In short, the government has not shown a likelihood of Mr. Olzabal-Tamayo's removal in the reasonably foreseeable future. Therefore, the Warden must release Mr. Olzabal-Tamayo under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

As a final matter, the court ordered Mr. Olzabal-Tamayo to show cause why the non-custodial respondents should not be dismissed from this case. In his reply, Mr. Olzabal-Tamayo says that he does not oppose the dismissal of the non-custodial respondent. Consequently, the court will dismiss the non-custodial respondent.

For these reasons, the court:

(1) DISMISSES the Chicago Field Office Director for United States Immigration and Customs Enforcement;

(2) GRANTS the amended petition for writ of habeas corpus [5] and ORDERS the Warden of the Miami Correctional Facility to release Leopoldo Olzabal-Tamayo on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **June 15, 2026**;

(3) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(4) ORDERS that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

June 12, 2026                           *s/ Damon R. Leichty*
                                        Judge, United States District Court